IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| LANDMARK TECHNOLOGY, LLC, | CASE NO. 6:12-cv-474 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| BRIDGESTONE AMERICAS, INC, | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Landmark Technology, LLC ("Plaintiff" or "Landmark"), for its

Complaint against Bridgestone Americas, Inc. ("Defendant" or "Bridgestone"), alleges as

follows:

**JURISDICTION AND VENUE**

1.      This is an action for patent infringement in violation of the Patent Act of the

United States, 35 U.S.C. §§ 1 *et seq*.

2.      This Court has original and exclusive subject matter jurisdiction over the patent

infringement claims for relief under 28 U.S.C. §§ 1331 and 1338(a).

3.      This Court has personal jurisdiction over Defendant because Defendant has

transacted and is transacting business in the Eastern District of Texas that includes, but is not

limited to, the use of products and systems that practice the subject matter claimed in the patents

involved in this action.

4.      Venue is proper in this district under 28 U.S.C. §1391(b-c) and 1400(b) because a

substantial part of the events or omissions giving rise to the claims occurred in this District

where Defendant has done business and committed infringing acts and continues to do business and to commit infringing acts.

## PARTIES

5.     Plaintiff Landmark is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 719 W. Front Street, Suite 157, Tyler, Texas 75702.

6.     Plaintiff is informed and believes, and on that basis alleges, that Defendant Bridgestone Americas, Inc. is a corporation organized under the laws of the State of Tennessee, with its principal place of business at 535 Marriott Drive, Nashville, TN 37214.  Plaintiff is further informed and believes, and on that basis alleges, that Bridgestone Americas, Inc. is in the business of selling passenger, truck, bus, off-road, agricultural, aviation and motorcycle tires, and derives a significant portion of its revenue from sales and distribution via Internet-based electronic commerce conducted on and using at least, but not limited to, the Internet website located at http://www.bridgestoneamericas.com (the "Website").

Plaintiff is further informed and believes, and on that basis alleges, that Bridgestone uses an Electronic Data Interchange ("EDI") enabled system that can be described as an automated data processing system for the transfer of structured data, by agreed upon message standards, from one enterprise business system to another whereby Bridgestone exchanges electronically business information with trading partners[1] for ordering and receiving goods.  Bridgestone derives a significant financial benefit through the use of its EDI-enabled system in that it allows Bridgestone to reduce or eliminate costs associated with printing, handling, organizing and

---

[1] Organizations that send or receive business information between each other in this manner are referred to as "trading partners" in EDI terminology.

storing paper documents and to increase the speed by which transactions can be completed.

Plaintiff is informed and believes, and on that basis alleges, that, at all times relevant hereto,

Bridgestone has done and continues to do business in this judicial district, including, but not

limited to, selling products to customers located in this judicial district by way of the Bridgestone

Website and by engaging in monetary and business transactions through its EDI-enabled system.

## FACTS

7.      On November 19, 1996, United States Patent No. 5,576,951 entitled "Automated

Sales and Services System" was duly and legally issued to Lawrence B. Lockwood

("Lockwood") as inventor.  A true and correct copy of United States Patent No. 5,576,951 is

attached hereto as Exhibit "A" and incorporated herein by this reference.  Following a

reexamination of Patent No. 5,576,951, the United States Patent and Trademark Office issued an

Ex Parte Reexamination Certificate, Number US 5,576,951 C1, on January 29, 2008, confirming

the validity of all ten (10) original claims and allowing twenty-two (22) additional claims. A true

and correct copy of Ex Parte Reexamination Certificate, Number US 5,576,951 C1 is attached

hereto as Exhibit "B" and incorporated herein by this reference.  (United States Patent No.

5,576,951, together with the additional claims allowed by Ex Parte Reexamination Certificate,

Number US 5,576,951 C1, shall hereinafter be referred to as the "'951 Patent.")  On September 1,

2008, Lockwood licensed all rights in the '951 Patent to Plaintiff.  Plaintiff is the exclusive

licensee of the entire right, title and interest in and to the '951 Patent, including all rights to

enforce the '951 Patent and to recover for infringement.  The '951 Patent is valid and in force.

8.      On September 11, 2001, United States Patent No. 6,289,319 entitled "Automated

Business and Financial Transaction Processing System" was duly and legally issued to Lawrence

B. Lockwood as inventor.  A true and correct copy of United States Patent No. 6,289,319 is

attached hereto as Exhibit "C" and incorporated herein by this reference.  Following a

reexamination of Patent No. 6,289,319, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate, Number US 6,289,319 C1, on July 17, 2007, confirming the validity of all six (6) original claims and allowing twenty-two (22) additional claims.  A true and correct copy of Ex Parte Reexamination Certificate, Number US 6,289,319 C1 is attached hereto as Exhibit "D" and incorporated herein by this reference.  (United States Patent No. 6,289,319, together with the additional claims allowed by Ex Parte Reexamination Certificate, Number US 6,289,319 C1, shall hereinafter be referred to as the "'319 Patent.")  On September 1, 2008, Lockwood licensed all rights in the '319 Patent to Plaintiff.  Plaintiff is the exclusive licensee of the entire right, title and interest in and to the '319 Patent, including all rights to enforce the '319 Patent and to recover for infringement.  The '319 Patent is valid and in force.

9.      On March 7, 2006, United States Patent No. 7,010,508 entitled "Automated Multimedia Data Processing Network" (the "'508 Patent") was duly and legally issued to Lawrence B. Lockwood as inventor.  A true and correct copy of the '508 Patent is attached hereto as Exhibit "E" and incorporated herein by this reference.  On September 1, 2008, Lockwood licensed all rights in the '508 Patent to Plaintiff.  Plaintiff is the exclusive licensee of the entire right, title and interest in and to the '508 Patent, including all rights to enforce the '508 Patent and to recover for infringement.  The '508 Patent is valid and in force.

10.      As more fully laid out below, Defendant has been and is now infringing the '951 Patent, the '319 Patent, and the '508 Patent, in this judicial district and elsewhere, by selling and distributing its products and services using electronic commerce systems, which, individually or in combination, incorporate and/or use subject matter claimed by the '951 Patent, the '319 Patent, and the '508 Patent.

## BACKGROUND OF ELECTRONIC DATA INTERCHANGE TECHNOLOGY

11.     Electronic Data Interchange (EDI) is a standards based system, typically following ANSI ASC X12[2] standards in the United States.  Documents exchanged electronically between the enterprise business software of businesses must follow strict formatting standards in order that separate entities with an EDI-enabled system may send and receive electronic documents via TCP/IP networks without a need to convert these documents into a format their enterprise business software system(s) can process or understand.  By following these standards, any number of separate entities can become trading partners because their particular EDI-enabled systems communicate using a standard electronic language.

12.     While the EDI documents follow a standardized format, the hardware and software incorporated into an overall EDI-enabled system does not.  That is, EDI-enabled systems do not contain the same features and capabilities for each entity and unique mappings of data must be defined and adhered to enable transactions between users.  The overall reach or capabilities of a particular EDI-enabled system is case dependent.  An EDI-enabled system may incorporate a plurality of hardware systems and general retail, specialized and customized software programs in order to form a synchronized electronic system that has the ability to transact some or all of inventory, shipping, purchasing retail, point-of-sale (POS) and order management functions, among others.

13.     Entities, including Defendant, establish guidelines by which others must comply in order to become a trading partner or in some cases comply with the established guidelines defined by their trading partner(s).  For example, entities must notify trading partners of the

_____

[2] ANSI ASC X12 is the official designation of the U.S. national standards body for the development and maintenance of Electronic Data Interchange (EDI) standards. The group is an accredited standards committee under the American National Standards Institute (ANSI).

information to include on a purchase order form.  In fact, several third party EDI solution providers design and/or sell software or Internet based interfaces that implement the trading partner specific guidelines by which others must comply in order to become a trading partner.

14.     Point-of-sale (POS) terminal hardware and software is often incorporated into an overall EDI-enabled system.  In-store POS terminals alone can contain specialized software and hardware that may be used to scan items for price and product information.

15.     As an element of an EDI-enabled system, the POS terminal is connected via an electronic communications network such as an intranet to "back office" computers or otherwise incorporated into a more comprehensive system.  This more comprehensive system can be a part of the overall EDI-enabled system or possibly the entire EDI-enabled system depending on the features and capabilities of a particular system.

16.     The EDI-enabled system can contain software and/or hardware that will take the information gathered at the point-of-sale and then process and analyze that data.  A typical capability includes automatically updating inventory levels for a particular item.

17.     Additionally, an EDI-enabled system may have the ability to take this information and alert the proper employees of items in need of replenishment.

18.     Alternatively, the EDI-enabled system may include specialized software that allows for automatic order placement based on a regular schedule for commonly sold items and inventory levels.  This function would involve analyzing inventory levels or date and combine that data with stored information such as a set quantity desired and shipment location.

19.     In any event, a purchase order will include with it the required order form, typically the ASC X12 standard 850 purchase order.  This is an electronic document which complies with the required EDI formatting standards and is then sent from one entity to another

directly or perhaps indirectly through a third party.  This exchange takes place over a communications network such as the Internet or a Value Added Network (VAN) and the details of this electronic exchange can then be stored on the EDI-enabled system for later review and/or analysis.

20.     Online POS transactions may also be incorporated into an overall EDI-enabled system.  Online POS transactions can be stored, processed and analyzed as part of an overall EDI-enabled system in the same way as in-store POS transactions.  For example, the details of a POS transaction that occurs online can then be stored and the inventory level of a particular item can be adjusted in real time.

21.     In either case, POS transactions that are incorporated into an overarching EDI-enabled system allow for some combination of automatic inventory tracking, future order placement assistance, as well the ability to store and compile sales data.

22.     Several types of hardware and/or software may be incorporated into an EDI-enabled system, such as inventory management software, accounting software, EDI solution software which provides the interface by which a company may trade with third parties, POS hardware and software, warehouse, "back office" or personal computers and display and entry devices through which Defendant manages its inventory, retail, point-of-sale (POS) and order placement and receiving system.

23.     It is the combination of some or all of these elements that results in a system that infringes the '319 and '508 patents.  Defendant has an EDI-enabled system which incorporates various hardware systems and specialized software that practices some or all of the claims of the '319 and '508 patents.

## FIRST CLAIM FOR RELIEF

### (Direct Infringement of the '951 Patent, in Violation of 35 U.S.C. § 271(a))

24.     Plaintiff refers to and incorporates herein by reference paragraphs 1-9.

25.     The claims of the '951 Patent relate to "a computer search system for retrieving information" and "a computerized system for selecting and ordering a variety of information, goods and services," each comprising a variety of features.

26.     The Bridgestone Website is a "computer search system[s] for retrieving information" and "computerized system[s] for selecting and ordering a variety of information, goods and services" practicing the claims of the '951 Patent.

27.     By way of example only, and not limited to it, Defendant's Website infringes Claim 10 of the '951 Patent in that, for example, the Defendant's Website provides a system that practices all of the limitations of the claim and on which it's customers search for information about products and purchase products, including:

       a.     The Website is a computerized system for selecting and ordering a variety of information, goods and services.

       b.     The Website includes a plurality of computerized data processing installations (the web server and its supporting systems) programmed for processing orders for said information, goods and services.

       c.     The Website is operated through at least one computerized station (the customer's computer).

       d.     The web server of the Website and that Defendant's customers' computers practice all of the remaining limitations of Claim 10 of the '951 Patent.

28.     Defendant, therefore, by the acts complained of herein, is making, using, selling, or offering for sale in the United States, including in the Eastern District of Texas, products

and/or services embodying the invention, and has in the past and is now continuing to infringe the '951 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

29.     Defendant threatens to continue to engage in the acts complained of herein and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable injury.  It would be difficult to ascertain the amount of compensation that would afford Plaintiff adequate relief for such future and continuing acts, and a multiplicity of judicial proceedings would be required.  Plaintiff does not have an adequate remedy at law to compensate it for the injuries threatened.

30.     By reason of the acts of Defendant alleged herein, Plaintiff has suffered damage in an amount to be proved at trial.

31.     Plaintiff is informed and believes, and on that basis alleges, that the infringement by Defendant is willful, wanton, and deliberate, without license and with full knowledge of the '951 Patent, thereby making this an exceptional case entitling Plaintiff to attorneys' fees and enhanced damages.

## SECOND CLAIM FOR RELIEF

### (Inducing Infringement of the '951 Patent, in Violation of 35 U.S.C. § 271(b))

32.     Plaintiff refers to and incorporates herein by reference paragraphs 1-9, 24-26.

33.     Plaintiff is informed and believes, and on that basis alleges, that Defendant has actively and knowingly induced infringement of the '951 Patent, in violation of 35 U.S.C. § 271(b) by, among other things, inducing its customers (the endusers of its Website) to utilize their own computers in combination with its Website, and incorporated and/or related systems, to search for and order information and products from its Website in such a way as to infringe the '951 Patent.

34.     By reason of the acts of Defendant alleged herein, Plaintiff has suffered damage in an amount to be proved at trial.

35.     Defendant threatens to continue to engage in the acts complained of herein and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable injury. Plaintiff does not have an adequate remedy at law.

36.     Plaintiff is informed and believes, and on that basis alleges, that the infringement by Defendant is willful, wanton, and deliberate, without license and with full knowledge of the '951 Patent, thereby making this an exceptional case entitling Plaintiff to attorneys' fees and enhanced damages.

### THIRD CLAIM FOR RELIEF

### (Direct Infringement of the '508 Patent, in Violation of 35 U.S.C. § 271(a))

37.     Plaintiff refers to and incorporates herein by reference paragraphs 1-9.

38.     The claims of the '508 Patent relate to "an automated multimedia system for data processing for delivering information on request to at least one user," comprising a variety of features.

39.     The Bridgestone Website is "an automated multimedia system for data processing for delivering information on request to at least one user," practicing the claims of the '508 Patent.

40.     By way of example, only, and not limited to it, Defendant's Website infringes Claim 8 of the '508 Patent in that, for example, Defendant's Website provide a system that practices all of the limitations of the claim and on which it's customers search for information about products, including:

a.      The Website is an automated multimedia system for data processing for delivering information on request to at least one user. That is, it uses text and

graphics, among other means, to deliver product information and other information to Defendant's customers.

     b.  The Website includes at least one computerized station (the server and its supporting systems).

     c.  The web server(s) of the Website practices all of the remaining limitations of Claim 8 of the '508 Patent.

   41.  Defendant, therefore, by the acts complained of herein, is making, using, selling, or offering for sale in the United States, including in the Eastern District of Texas, products and/or services embodying the invention, and has in the past and is now continuing to infringe the '508 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

   42.  Defendant threatens to continue to engage in the acts complained of herein and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable injury.  It would be difficult to ascertain the amount of compensation that would afford Plaintiff adequate relief for such future and continuing acts, and a multiplicity of judicial proceedings would be required.  Plaintiff does not have an adequate remedy at law to compensate it for the injuries threatened.

   43.  By reason of the acts of Defendant alleged herein, Plaintiff has suffered damage in an amount to be proved at trial.

   44.  Plaintiff is informed and believes, and on that basis alleges, that the infringement by Defendant is willful, wanton, and deliberate, without license and with full knowledge of the '508 Patent, thereby making this an exceptional case entitling Plaintiff to attorneys' fees and enhanced damages.

## FOURTH CLAIM FOR RELIEF

### (Inducing Infringement of the '508 Patent, in Violation of 35 U.S.C. § 271(b))

45.     Plaintiff refers to and incorporates herein by reference paragraphs 1-9, 37-39.

46.     Plaintiff is informed and believes, and on that basis alleges, that Defendant has actively and knowingly induced infringement of the '508 Patent, in violation of 35 U.S.C. § 271(b) by, among other things, inducing its customers (the endusers of its Website) to utilize their own computers in combination with its Website, and incorporated and/or related systems, to search for and order information and products from its Website in such a way as to infringe the '508 Patent.

47.     By reason of the acts of Defendant alleged herein, Plaintiff has suffered damage in an amount to be proved at trial.

48.     Defendant threatens to continue to engage in the acts complained of herein and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable damage. Plaintiff does not have an adequate remedy at law.

49.     Plaintiff is informed and believes, and on that basis alleges, that the infringement by Defendant is willful, wanton, and deliberate, without license and with full knowledge of the '508 Patent, thereby making this an exceptional case entitling Plaintiff to attorneys' fees and enhanced damages.

## FIFTH CLAIM FOR RELIEF

### (Direct Infringement of the '508 Patent, in Violation of 35 U.S.C. § 271(a))

50.     Plaintiff refers to and incorporates herein by reference paragraphs 1-9, 11-23.

51.     The claims of the '508 Patent relate to "an automated multimedia system for data processing for delivering information on request to at least one user," comprising a variety of features.

52.     The Bridgestone Americas EDI-enabled system is "an automated multimedia system for data processing for delivering information on request to at least one user," practicing the claims of the '508 Patent.

53.     By way of example, only, and not limited to it, Defendant's EDI-enabled system infringes Claim 8 of the '508 Patent in that, for example, the Defendant's EDI-enabled system provides a system that practices all of the limitations of the claim and on which Defendant obtains information about products and transactions, including:

a.     The EDI-enabled system is an automated multimedia system for data processing for delivering information on request to at least one user.  That is, the EDI-enabled system uses text and graphics, among other means, to deliver business transaction information, such as order status, and other information to the particular Defendant.

b.     The EDI-enabled system includes at least one computerized station (the computer(s) through which the EDI-enabled system is implemented and the server and its supporting systems).

c.     The server and Defendant's computerized station(s) practice all of the remaining limitations of Claim 8 of the '508 Patent.

54.     Defendant, therefore, by the acts complained of herein, is making, using, selling, or offering for sale in the United States, including in the Eastern District of Texas, products and/or services embodying the invention, and has in the past and is now continuing to infringe the '508 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

55.     Defendant threatens to continue to engage in the acts complained of herein and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable injury.  It

would be difficult to ascertain the amount of compensation that would afford Plaintiff adequate relief for such future and continuing acts, and a multiplicity of judicial proceedings would be required.  Plaintiff does not have an adequate remedy at law to compensate it for the injuries threatened.

56.     By reason of the acts of Defendant alleged herein, Plaintiff has suffered damage in an amount to be proved at trial.

57.     Plaintiff is informed and believes, and on that basis alleges, that the infringement by Defendant is willful, wanton, and deliberate, without license and with full knowledge of the '508 Patent, thereby making this an exceptional case entitling Plaintiff to attorneys' fees and enhanced damages.

## SIXTH CLAIM FOR RELIEF

### (Direct Infringement of the '319 Patent, in Violation of 35 U.S.C. § 271(a))

58.     Plaintiff refers to and incorporates herein by reference paragraphs 1-9, 11-23.

59.     The claims of the '319 Patent relate to "an automated data processing system for processing business and financial transactions between entities from remote sites" comprising a variety of features.

60.     The Bridgestone Americas EDI-enabled system (the "EDI-enabled system") is "an automated data processing system for processing business and financial transactions between entities from remote sites" practicing the claims of the '319 Patent.

61.     By way of example, only, and not limited to it, Defendant's EDI-enabled system infringe Claim 1 of the '319 Patent in that, for example, Defendant's EDI-enabled system provides a system that practices all of the limitations of the claim and on which Defendant processes business information and places purchase orders, including:

a.      The EDI-enabled system is an automatic data processing system for processing business and financial transactions between entities from remote sites. That is, between Defendant and its trading partners or its point-of-sale terminal(s).

b.      The EDI-enabled system includes a central processor (the server and its supporting systems) programmed and connected to process a variety of inquiries and orders transmitted from said remote sites.  Defendant's EDI-enabled system allows for a broad range of transactions, thus a range of orders are possible.  The EDI-enabled system processes a "variety of inquiries," such as inquiries regarding order history and order status.

c.      The EDI-enabled system is operated through a terminal (the Defendant's computer(s) or point-of-sale terminal(s)) at each of said remote sites, which terminal includes a data processor and operates in response to operational sequencing lists of program instructions (the HTML code constituting the web pages of web-based EDI-enabled systems and/or the code constituting the software application of software-based EDI-enabled systems).

d.      The server of the EDI-enabled system and Defendant's computerized station(s) practice all of the remaining limitations of Claim 1 of the '319 Patent.

62.      Defendant, therefore, by the acts complained of herein, is making, using, selling, or offering for sale in the United States, including in the Eastern District of Texas, products and/or services embodying the invention, and has in the past and is now continuing to infringe the '319 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

63.      Defendant threatens to continue to engage in the acts complained of herein and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable injury.  It would be difficult to ascertain the amount of compensation that would afford Plaintiff adequate

relief for such future and continuing acts, and a multiplicity of judicial proceedings would be required.  Plaintiff does not have an adequate remedy at law to compensate it for the injuries threatened.

64.     By reason of the acts of Defendant alleged herein, Plaintiff has suffered damage in an amount to be proved at trial.

65.     Plaintiff is informed and believes, and on that basis alleges, that the infringement by Defendant is willful, wanton, and deliberate, without license and with full knowledge of the '319 Patent, thereby making this an exceptional case entitling Plaintiff to attorneys' fees and enhanced damages.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.     For an order finding that the '951 Patent is valid and enforceable;

B.     For an order finding that the '319 Patent is valid and enforceable;

C.     For an order finding that the '508 Patent is valid and enforceable;

D.     For an order finding that, by the acts complained of herein, Defendant has directly infringed, and induced others to infringe, the '951 Patent in violation of 35 U.S.C. § 271;

E.     For an order finding that, by the acts complained of herein, Defendant has directly infringed the '319 Patent in violation of 35 U.S.C. § 271;

F.     For an order finding that, by the acts complained of herein, Defendant has directly infringed, and induced others to infringe, the '508 Patent in violation of 35 U.S.C. § 271;

G.     For an order finding that Defendant has willfully infringed the '951 Patent, the '319 Patent and the '508 Patent;

H.      For an order temporarily, preliminarily and permanently enjoining Defendant, its officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, and all others acting in concert or privity with any of them, from infringing the '951 Patent, and from inducing others to infringe the '951 Patent;

I.      For an order temporarily, preliminarily and permanently enjoining Defendant, its officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, and all others acting in concert or privity with any of them, from infringing the '319 Patent;

J.      For an order temporarily, preliminarily and permanently enjoining Defendant, its officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, and all others acting in concert or privity with any of them, from infringing the '508 Patent, and from inducing others to infringe the '508 Patent;

K.      For an order directing Defendant to deliver to Plaintiff for destruction or other disposition all infringing products and systems in its possession;

L.      For an order directing Defendant to file with the Court, and serve upon Plaintiff's counsel, within thirty (30) days after entry of the order of injunction, a report setting forth the manner and form in which Defendant has complied with the injunction;

M.      For an order awarding Plaintiff general and/or specific damages, including a reasonable royalty and/or lost profits, in amounts to be fixed by the Court in accordance with proof, including enhanced and/or exemplary damages, as appropriate, as well as all of Defendant's profits or gains of any kind from its acts of patent infringement;

N.      For an order awarding enhanced damages pursuant to 35 U.S.C. § 284 due to the willful and wanton nature of Defendant's infringement;

O.      For an order awarding Plaintiff all of its costs, including its attorneys' fees, incurred in prosecuting this action, including, without limitation, pursuant to 35 U.S.C. § 285 and other applicable law;

P.      For an order awarding Plaintiff pre-judgment and post-judgment interest; and

Q.      For an order awarding Plaintiff such other and further relief as the Court may deem just and proper.

DATED:  July 23, 2012

**OF COUNSEL:**

Jeffer Mangels Butler and Mitchell, LLP

     Stanley M. Gibson
     (Cal. Bar No. 162329)
     *smg@jmbm.com*

     Ali Shalchi
     (Cal. Bar No. 239164)
     *axs@jmbm.com*

1900 Avenue of the Stars, Seventh Floor
Los Angeles, CA 90067
Telephone: (310) 203-8080
Facsimile: (310) 203-0567

Respectfully Submitted,

By: /s/Charles Ainsworth
_____

Charles Ainsworth
State Bar No.  00783521
Robert Christopher Bunt
State Bar No. 00787165
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 1114
Tyler, TX 75702
903/531-3535
903/533-9687
E-mail: charley@pbatyler.com
E-mail: rcbunt@pbatyler.com

**ATTORNEYS FOR PLAINTIFF,
LANDMARK TECHNOLOGY, LLC**